UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| TRICIA BAYSINGER § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. _____ |
| VS. § | |
| § | |
| NATIONSTAR MORTGAGE, LLC, § | |
| § | |
| Defendant. § | |

**COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Tricia Baysinger ("Plaintiff"), by counsel, and for her Complaint against the defendant, Nationstar Mortgage, LLC, ("Defendant" or "Nationstar") and states as follows:

**I. INTRODUCTION**

1.  Plaintiff asserts claims against Defendant for the willful, knowing, and/or negligent violation of: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 et seq., (known as the Fair Credit Reporting Act, hereinafter referred to as the "FCRA"); 2) the Texas Debt Collection Act Tex. Fin. Code § 392.001 et. seq. (known as the "TDCA"); 3) the Telephone Consumer Protection Act (known as the "TCPA"); 4) the common law tort of invasion of privacy; and 5) the chapter 7 discharge injunction of the United States Bankruptcy Court of the Eastern District of Texas, Sherman Division, and seeks to recover actual, statutory, and punitive damages, injunctive relief, legal fees and expenses against Defendant.

1

## II. PARTIES

2. Plaintiff is a natural persons residing in Collin County, Texas and they are "consumers" as defined by the FCRA.

3. The Defendant is a limited liability company which may be served by sending certified mail to its registered agent Corporation Service Company, Greg A. Oniu, VP, 211 E 7th St. Suite 620, Austin, TX 78701-3218.

4. Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined and contemplated respectively, under the FCRA.

5. Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6) and 15 U.S.C. § 1692a.

6. The debt that Defendant was attempting to collect was a "consumer debt" as defined in 15 U.S.C. § 1692a.

7. Defendant is a furnisher of consumer credit information to TransUnion, LLC (TransUnion), Equifax, Inc. (Equifax), and Experian Information Solutions, LLC (Experian), the three (3) major national consumer reporting agencies.

## III. JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

9. Venue in this District is proper because the defendant transacts business in this District and the conduct complained of occurred in this District.

## IV. FACTUAL ALLEGATIONS

10. On October 25, 2012, Plaintiff filed a Chapter 7 bankruptcy in case number was 12-42865 ("Bankruptcy Case") and it was filed in the Eastern District of Texas Bankruptcy Court ("Bankruptcy Court").

11. Prior to Plaintiff filing her Bankruptcy Case, Bank of America, N.A. ("BANA"), the previous owner and/or servicer of the debt at issue, asserted a pre-petition claim against Plaintiff in an attempt to collect a consumer debt allegedly owed by Plaintiff. The debt required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes. In Plaintiff's bankruptcy petition, the claim was listed in Schedule "D" as a secured claim, such claim was secured by a lien on Plaintiff's prior home located at 564 Fisher Dr., Allen, Texas 75002 (the "Property") for a Loan comprised of a First Lien Account, BANA Account No. XXXX7323 ("First Lien Account") and a Second Lien Account, BANA Account No. XXXX6602 ("Second Lien Account") (collectively the "Accounts") (the Accounts are a/k/a Nationstar Loan Nos. 0610193815 and 0616187225). In her Bankruptcy Case, Plaintiff listed the Property as "surrendered" on her Debtor's Individual Statement of Intentions.

12. On October 28, 2012, the Bankruptcy Noticing Center for the Bankruptcy Court mailed out the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") to all creditors, including BANA and other parties based on the mailing matrix previously filed with the Bankruptcy Court. This mailing constituted formal notice to BANA of the above Chapter 7 Bankruptcy. The United States Postal Service

did not return the notice sent to BANA.  If the United States Postal Service did not return the notice, there is a presumption that BANA received the notice mailed to it.

13. On February 6, 2013, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein).  The order discharged Plaintiff from any liability for the subject pre-petition claim.

14. On February 8, 2011, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the Discharge Order to BANA by U.S. first class mail, which was not returned.

15. At no time did BANA object to or dispute the details of the subject claim listed in Schedule D of Plaintiff's petition filed in her Bankruptcy Case.

16. At no time during the Chapter 7 case did Plaintiff reaffirm the debt at issue.

17. At no time during the Chapter 7 case was BANA's pre-petition claim declared to be non-dischargeable.

18. On or before October 10, 2013, the Accounts were transferred to Defendant Nationstar for servicing and Defendant notified Plaintiff of such transfer by written letter dated October 10, 2013 as to the BANA Second Lien Account.  A true and correct copy of the October 10, 2013, Notice of Assignment is attached hereto as Exhibit "A."

19. On numerous occasions between October 10, 2013 and January 14, 2014 Defendant contacted Plaintiff by telephone and in writing about the discharged debt at issue.  In response, Plaintiff asserted claims against Nationstar for violation of the discharge injunction as well as other state and federal statutes in Case No. DC-13-13379, *Tricia Ann Baysinger f/k/a Tricia Ann Crawford vs. Nationstar Mortgage LLC;* In the 68th Judicial District Court of Dallas County, Texas (the "Prior Lawsuit").

20. On or about January 16, 2014, Plaintiff and Defendant entered into a settlement agreement (the "Prior Settlement Agreement") resolving the claims asserted in the Prior Lawsuit. When the parties settled the Prior Lawsuit, it was made clear between the parties that Plaintiff wanted no further contact with Defendant, and Defendant acknowledged this by entering into the Prior Settlement Agreement.

21. Despite the discharge received in the Bankruptcy Case and the Prior Settlement Agreement, Defendant continued to engage in debt collection activity against Plaintiff on the subject discharged debt on the Accounts by: (1) sending Plaintiff notices and letters; (2) calling Plaintiff regarding the Accounts; and (3) illegally accessing Plaintiff's consumer reports from one or more of the national credit reporting agencies.

22. On January 23, 2014, Defendant impermissibly accessed Plaintiff's TransUnion consumer report. A true and correct copy of the January 23, 2014 TransUnion consumer report is attached hereto as Exhibit "B."

23. On or about March 27, 2014, Defendant sent Plaintiff a letter regarding lender placed insurance on the Property. The letter informs Plaintiff that she agreed to keep insurance on the Property, in the form and amounts Defendant requires and failure to do so is a brach of those requirements. The letter further instructs Plaintiff to contact her insurance agent or company and purchase coverage and to provide proof of insurance to Defendant by the instructions provided for in the letter. A true and correct copy of the letter dated March 27, 2014 that Defendant mailed to Plaintiff is attached hereto as Exhibit "C."

24. On or about April 9, 2014, Defendant sent Plaintiff a letter stating they have assigned a dedicated loan specialist to assist her and for her to "[p]lease don't wait to contact your Dedicated Loan Specialist named above" whose phone number and address are provided.

        A true and correct copy of the letter dated April 9, 2014 which Defendant mailed to Plaintiff is attached hereto as Exhibit "D."

25.    On April 12, 2014, Plaintiff received a call from Defendant's employee or representative. The person calling stated that Plaintiff's name was still on the deed and advised Plaintiff of the Property's foreclosure status. The caller further informed Plaintiff that Defendant would mail her paperwork and call her back to further discuss the matter.

26.    On or about April 28, 2014, Defendant sent Plaintiff two (2) identical letters stating "**YOU ARE IN DEFAULT UNDER THE TERMS OF YOUR NOTE AND MORTGAGE/ DEED OF TRUST**" and that the account is now due for the **09/01/2011** payment, and subsequent payments. The letter further informed Plaintiff that it was a "demand for a payment of **$49,026.34**, which is the total amount due and owing as of the date of this letter, including all late payments, any late charges, periodic adjustments to the payment amount (if applicable, attorney fees and expenses of collection" and that Plaintiff had the right to cure the default by payment to total amount due listed above, within 30 days from the date of the letter which is **05/28/2014**. True and correct copies of the letter dated April 28, 2014 which Defendant mailed to Plaintiff is attached hereto as Exhibit "E" and "F."

27.    On or about April 30, 2014, Defendant sent Plaintiff a letter stating they have assigned a dedicated loan specialist to assist her and for her to "[p]lease don't wait to contact your Dedicated Loan Specialist named above" whose phone number and address are provided. A true and correct copy of the letter dated April 30, 2014 which Defendant mailed to Plaintiff is attached hereto as Exhibit "G."

28. On May 6, 2014, Plaintiff received a call from one of Defendant's employees or representatives on her cell phone.

29. On or about May 13, 2014, Defendant sent Plaintiff a letter stating her mortgage loan was past due and the total amount needed to reinstate or bring the account current was $50,327.67 and the principal obligation under the mortgage is $110,332.39.  The letter also included information about loss mitigation options available to satisfy the debt.  A true and correct copy of the letter dated May 13, 2014 which Defendant mailed to Plaintiff is attached hereto as Exhibit "H."

30. On May 15, 2014, Plaintiff received a call from an individual who identified himself as "Leron at Nationstar" from phone number 469 549-3159.  The caller informed Plaintiff that Defendant would accept a deed in lieu of foreclosure on the Property and that a "Cash for Keys" program was available to her.

31. On May 16, 2014, Plaintiff received a call from an individual who identified herself as "Carol at Nationstar."  The caller informed Plaintiff that the Accounts may have been discharged but they were still Plaintiff's responsibility because the Property was never foreclosed.

32. On May 19, 2014, Plaintiff received a call from Defendant on her cell phone, but the caller did not leave a message.

33. On or about June 3, 2014, Defendant sent Plaintiff a letter about the lack of hazard insurance on the Property, informing her that Defendant bought insurance on the Property and added the cost to her mortgage loan account which "[w]ill cost an estimated $2,175.83 annually, which may be more expensive than insurance you can buy yourself" and "[m]ay not provide as much coverage as an insurance policy you buy yourself."  The

letter also includes instructions for Plaintiff to provide proof of insurance to Defendant. A true and correct copy of the June 3, 2014, letter is attached hereto as Exhibit "I."

34. On June 17 2014, Plaintiff received an email from Defendant asking if she would like to start receiving her statements and correspondence online. Attached to the email was another application for mortgage protection insurance. A true and correct copy of the June 17, 2014 email is attached hereto as Exhibit "J."

## V. GROUNDS FOR RELIEF - COUNT I
## FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

35. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

36. The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

> (f) Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681b (f).

37. Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

> (a) In General. – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

   \*\*\*

   (3) To a person which it has reason to believe –

  (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

   \*\*\*

  (F) otherwise has a legitimate business need for the information * * *

 (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

38. After the Discharge Order was signed and entered in Plaintiff's Bankruptcy Case and the parties entered into the Prior Settlement Agreement, Defendant requested and obtained Plaintiff's consumer report from TransUnion credit bureau.

39. On such occasion, Defendant represented to TransUnion that such request was made for "account review," collection" or other lawful purposes.

40. When requesting and obtaining Plaintiff's credit information from TransUnion, as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information.

41. Defendant has actual knowledge that as of Plaintiff's Bankruptcy Case filing in October 25, 2012 and its subsequent discharge, Defendant was legally prohibited from pursuing any collection against Plaintiff on the discharged debt or communicating with Plaintiff about the Accounts and the underlying discharged debt to justify an account review of her

credit information. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit reports with the credit bureaus at all relevant times.

42. At the time Defendant impermissibly accessed Plaintiff's credit report(s), Defendant had actual knowledge that Plaintiff had not requested new credit from it, nor had she initiated a new credit transaction with Defendant at any time since her bankruptcy filing or discharge. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit information as it did.

43. Defendant had actual knowledge as of Plaintiff's bankruptcy discharge, she did not authorize access and review of her consumer report by Defendant. Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit information when it engaged in such action.

44. For Defendant to request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge that it had no permissible purpose to do so, constitutes its knowing and willful violation of the FCRA.

45. After a reasonable time to conduct discovery, Plaintiff believes she can prove that Defendant requested and obtained Plaintiff's private personal and financial information from TransUnion or the other credit bureaus for the illegal purpose of attempting to collect on the subject discharged debt.

46. After a reasonable time to conduct discovery, Plaintiff believes she can prove that Defendant used false pretenses, namely the representation that it intended to use Plaintiff's consumer report for account review or collection purposes, to obtain Plaintiff's

private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

47. After a reasonable time to conduct discovery, Plaintiff believes she can prove, additionally and/or in the alternative, Defendant is unwilling or unable to prevent its system from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having her private, personal and financial information disclosed without her consent, authorization or other legal justification.

48. As a direct and proximate result of Defendant's conduct as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of her privacy, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

49. Plaintiff has or will face credit denials and higher costs in many types of consumer transactions because of Defendant illegal access of her credit reports.  Furthermore, Defendant's actions at issue have caused Plaintiff to suffer embarrassment, mental anguish, inconvenience, and other pecuniary and non-pecuniary damages.

50. Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights.  The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

47. After a reasonable time to conduct discovery, Plaintiff believes she can prove, additionally and/or in the alternative, Defendant is unwilling or unable to prevent its system from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having her private, personal and financial information disclosed without her consent, authorization or other legal justification.

48. As a direct and proximate result of Defendant's conduct as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of her privacy, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

49. Plaintiff has or will face credit denials and higher costs in many types of consumer transactions because of Defendant illegal access of her credit reports.  Furthermore, Defendant's actions at issue have caused Plaintiff to suffer embarrassment, mental anguish, inconvenience, and other pecuniary and non-pecuniary damages.

50. Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights.  The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

## VI. GROUNDS FOR RELIEF - COUNT II

## TEXAS FINANCE CODE - UNFAIR DEBT COLLECTION

51. Plaintiff repeats, re-alleges, and incorporates by reference all paragraph as above as if fully rewritten here.

52. Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

    a) Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from taking an action prohibited by law, since the FCRA prohibits accessing a credit report without a permissible purpose, and since Defendant's attempts to collect the discharged debt constituted a violation of the bankruptcy discharge injunction;

    b) Tex. Fin. Code § 392.304(a)(8), which prohibits Defendant from misrepresenting the character, extent, or amount of Plaintiff's debt, or misrepresenting the status of Plaintiff's debt in a judicial or governmental proceeding, since Defendant alleged the justification for accessing the reports was an "account review," "collection," or other permissible purpose," that was a misrepresentation of the status of debt at issue, and, by continuing to send letters and notices to Plaintiff showing a balance due on the Accounts and demanding payment or that some action be taken by Plaintiff to benefit Defendant, Defendant was misrepresenting that the debt was collectable when it was not by virtue of the discharge injunction; and

    c) Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, since the debt at issue had been discharged and there were no other or subsequent transactions between the parties, the only conclusion that can be drawn is Defendant was trying to gather information for an

attempt to collect the debt at issue in violation of the discharge injunction. Also, Defendant's continued sending of notices and demands for payment to Plaintiff on the Account(s) was a deceptive means to collect a debt since the debt had already been discharged and was uncollectible.

53. Under Tex. Fin. Code Ann. § 392.403, the said violations render Defendant liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees. Plaintiff's injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

54. Due to Defendant's conduct, Plaintiff was forced to hire counsel and her damages include reasonable attorney's fees incurred in prosecuting this claim.

## VII. GROUNDS FOR RELIEF - COUNT III

## INVASION OF PRIVACY

55. Plaintiff restates and reiterates herein all previous paragraphs.

56. Defendant's conduct, as described herein, when it acquired a copy of Plaintiff's consumer report constituted an invasion of Plaintiff's private affairs. The invasion was one that would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included a consumer report. Such wrongful acts caused injury to Plaintiff which resulted in extreme emotional anguish, loss of time, and damage to her credit.

Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VIII. GROUNDS FOR RELIEF - COUNT IV

## VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

57. Plaintiff repeats, re-alleges, and incorporates herein all previous paragraphs above as if set forth herein in their entirety.

58. At all times material to this proceeding, Defendant had actual knowledge of Plaintiff's Bankruptcy Case and the discharge of the debt at issue.

59. Defendant failed to cease its debt collection activity on the Account(s) and debt at issue when it became aware that Plaintiff filed for bankruptcy protection and the debt had been discharged in her Bankruptcy Case, as evidenced by Defendant sending Plaintiff letters and notices regarding the Accounts and accessing her credit report from TransUnion without a lawful purpose.

60. Defendant's aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a). Defendant's failure to comply with the aforesaid laws, in light of repeated notices from the Bankruptcy Court, the Prior Settlement Agreement resolving claims for previously alleged discharge violations, and the discharge of Plaintiff's debt at issue and the legal effect of the discharge; illustrates its contempt for Federal law and the discharge injunction.

61. The actions of Defendant in accessing Plaintiff's credit report from TransUnion along with sending Plaintiff collection letters and other correspondence on the Accounts, constitutes a gross violation of the discharge injunction as set forth in 11 U.S.C. § 524(a)(1)-(3).

62. The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the chapter 7 bankruptcy filed by Plaintiff. With this prima facie showing, the duty is on Defendant to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on her claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiff. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

63. Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…"

64. No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permits the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

65. The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Court here, and no

waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

66. Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiff with policing the misconduct of Defendant would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant. No allegation of a mitigation as a defense should be allowed.

67. Plaintiff has been injured and damaged by Defendant's actions and is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524, and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX. GROUNDS FOR RELIEF - COUNT V
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

68. Plaintiff restates and reiterates herein all previous paragraphs.

69. In the last year preceding the filing of this Complaint, Defendant made and/or initiated a series of at least five (5) telephone calls to Plaintiff's cell phone. (Hereinafter referred to as the "Telephone Calls").

70. The Telephone Calls were placed by Defendant's employees or agents.

71. The Telephone Calls were initiated by an automatic dialing system.

72. The telephone system utilized by Defendant to place the Telephone Calls has the capability to dial telephone numbers without human intervention.

73. Defendant dialed Plaintiff's cell phone using its telephone system and without human intervention.

74. The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq*, (the "TCPA"), prohibits making "any call (other than a call made for emergency purposes or made with the prior express of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227 (b)(1)(A)(iii).

75. Congress delegated authority to the Federal Communications Commission (FCC) to promulgate implementing regulations. 47 U.S.C. §227 (b)(2). In relevant part, the FCC's implementing regulations provide: "No person . . . may (I) initiate any telephone call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) To any telephone number assigned to a . . . cellular telephone service."

76. The TCPA creates a private federal cause of action. 47 U.S.C. §227(b)(3). A plaintiff who prevails in an action for damages under the TCPA is entitled to the greater of actual damages or $500 for each violation, plus additional damages up to the greater of $1,500 or treble actual damages for each violation committed willfully or knowingly. 47 U.S.C. §227 (b)(3).

77. The actions of Defendant in this case in repeatedly calling Tricia Baysinger on her Cell Phone violated the provisions of the TCPA for which Plaintiff seeks damages. Even if the call(s) did not connect to Plaintiff the attempt to make the call is still a violation. *See Manufacturers Auto Leasing, Inc. vs. Autoflex Leasing, Inc*. 139 S.W.3rd 342, 347 (Tex. App.–Fort Worth 2004, pet denied) (citing FCC Enforcement Action Letter in Case No. EB-00TC-001).

78. The Telephone Calls were willfully placed.

79. The Telephone Calls were knowingly placed.

80. The Telephone Calls were not made for emergency purposes.

81. Plaintiff did not give her prior express consent to be called using an artificial or pre-recorded voice or by use of an automatic dialing system. Further, Plaintiff instructed Defendant, on multiple occasions verbally and in writing, as evidenced by the Prior Settlement Agreement), to cease and desist contacting her by telephone and other means.

82. The exact dates and times of the calls are unknown at this time but will be provided at the time of trial.

83. Plaintiff never authorized Defendant to call her on her cell phone regarding the Accounts.

84. During the period beginning on January 14, 2014 and continuing through the present time, Defendant's employees and agents have knowingly or willfully violated the TCPA by: (1) placing numerous calls to Plaintiff's cell phone; (2) using an automatic telephone dialer system; and/or (3) leaving an artificial or pre-recorded voice to deliver messages.

85. The actions of Defendant at issue were willful and intentional.

86. The calls adversely affected the privacy rights that the TCPA was intended to protect.

87. Plaintiff has complied with all conditions precedent to bring this action.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, prays that the Court will:

A. Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs and reasonable and necessary attorney fees as provided by the FCRA, TDCA, and TCPA, for invasion of privacy and for violation of the bankruptcy discharge injunction;

B. Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C. Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D. Grant such other and further relief, in law or equity, to which Plaintiff might show herself justly entitled.

Respectfully submitted,

_____/s/ James J. Manchee_____
James J. Manchee
State Bar Number 00796988
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

ATTORNEY FOR PLAINTIFF

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: 8-5-14                  _____/s/ James J. Manchee_____
                              James J. Manchee